# IN THE UNITED STATES DISCTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SADON WEATHINGTON<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FDATR, INC., an Illinois Corporation; and doing business as FEDERAL STUDENT LOAN RELIEF, FEDERAL STUDENT LOAN RELIEF, INC., FEDERAL TAX RELIEF, FEDERAL TAX RELIEF, INC., and FEDERAL DEBT AND TAX RELIEF, LLC.;<br><br>TELDEBT SOLUTIONS INC., an involuntarily dissolved Illinois Corporation;<br><br>DEAN TUCCI as President of TELDEBT SOLUTIONS, INC., and former President of FDATR, INC., and<br><br>KENNETH WAYNE HALVERSON, individually and as President and CEO of FDATR, INC., and<br><br>TAHJA HARDEN, as a supervisor employed and acting on behalf of FDATR, INC.; and<br><br>TONY MALTESE, as HR director for FDATR, INC. | CASE: 18-CV-2113<br><br>HON. VIRGINIA KENDALL<br><br>COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION<br><br>DEMAND FOR JURY TRIAL |

## FIRST AMENDED COMPLAINT

PLAINTIFF, Sadon Weathington, by and through his attorney Rita Haley-Austin, Haley Austin Law, PC., brings this action against Defendants FDATR, INC., an Illinois Corporation; and doing business as FEDERAL STUDENT LOAN RELIEF, FEDERAL STUDENT LOAN RELIEF, INC., FEDERAL TAX RELIEF, FEDERAL TAX RELIEF, INC., and FEDERAL DEBT AND TAX RELIEF, LLC.; TELDEBT SOLUTIONS INC., an involuntarily dissolved Illinois Corporation; DEAN TUCCI, as President of TELDEBT SOLUTIONS, INC., and former President of FDATR, INC., and KENNETH WAYNE HALVERSON, individually and as President and CEO of FDATR, INC., and TAHJA HARDEN, as a supervisor employed and acting on behalf of FDATR, INC.; and TONY MALTESE as HR director, an executive employee of FDATR, INC., alleging, upon knowledge as to himself and otherwise upon information and belief, as follows:

1

## PRELIMINARY STATEMANT

This action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S. C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin; herein after 'Title VII'), and 775 ILCS 5/2-101 through 5/2-105 (hereinafter "State Law"), and 42 U.S.C.§ 1981, the Civil Rights Act of 1866 (hereinafter "Section 1981").

This action seeks liquidated and actual damages for Defendant's unlawful employment practices on the basis of sex, race, gender and retaliation in violation of Title VII of the Civil Rights Act of 1964.

Plaintiff further brings this action after filing a charge with the Equal Employment Opportunity Commission, Chicago District office in September 2017 regarding defendant's alleged discriminatory conduct. The EEOC issued a Notice of Right to Sue Letter on January 23, 2018 (a copy of the same attached hereto).

Plaintiff has filed this action within 90 days after receipt of his 'Notice of Right to Sue letter from the EEOC, and has satisfied all statutory prerequisites for filing this action.

## JURISDICTION & VENUE

1. This Court has subject matter jurisdiction pursuant to the Constitution of the United States, federal claims. The Court has original jurisdiction because the Plaintiff asserts claims that arise under the Constitution of the United States. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Plaintiffs' federal question claims that they form part of the same case or controversy.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2), as a substantial part of the events giving rise to Plaintiff's claims occurred in Wood Dale, Illinois, which is within this judicial district.

## PARTIES

1. Plaintiff, Sadon Weathington, is a resident of the State of Illinois, County of Cook.
2. Defendant FDATR, Inc. is an Illinois registered corporation with its principal place of business at 199 S Addison, Ste 104, Wood Dale, Illinois, and was at all times material hereto, an Illinois corporation doing business in this district. Defendant FDATR does business as FEDERAL STUDENT LOAN RELIEF, FEDERAL STUDENT LOAN RELIEF, INC., FEDERAL TAX RELIEF, FEDERAL TAX RELIEF, INC., and FEDERAL DEBT AND TAX RELIEF, LLC.; TELDEBT SOLUTIONS INC, all operating in Illinois and sharing the same ownership.
3. Defendant Dean Tucci, an individual, is listed as the President of FDATR. Upon information and belief, Defendant Tucci is also a resident of the State of Illinois.
4. Defendant Kenneth Halverson, an individual, is listed as also known to be the "President' of FDATR. Upon information and belief, Defendant Halverson is a resident of the State of Illinois.
5. Defendant Tony Maltese, an individual, is last known to Plaintiff as the Human Resources Manager of FDATR. Upon information and belief, Defendant Maltese is a resident of the State of Illinois.
6. Defendant Tahja Harden, an individual, is a Sales Manager at FDATR. Upon information and belief, Defendant Harden is a resident of the State of Illinois.

## STATEMENT OF FACTS

7. Plaintiff Weathington, a heterosexual black male, was at all times material hereto, an employee of FDATR Solutions.
8. Approximately eighteen months ago Mr. Weathington was offered and accepted a position with FDATR. He was hired as a student loan and debt consultant under the company's TelDebt arm. Mr. Weathington worked out of the Wood Dale, IL office from June 27, 2016-June 8, 2017.

9. Defendant FDATR sells debt and student loan relief services to consumers, alleging the ability to negotiate lower payments, restructuring of loans and debt balances, and pull students out of loan default.

10. Prior to starting with this company, Mr. Weathington had more than 15 years' experience working in the debt and collections field.

11. Mr. Weathington was hired by Dean Tucci, who, at the time was primary executive- believed to be President- running the company. His direct supervisor was Tahja Harden, a sales manager. It should be noted that Mr. Weathington had previously worked with Ms. Harden at another company and had a prior romantic relationship, but said relationship dissolved long before Mr. Weathington came to be employed by the offending company.

12. Throughout his employment, Plaintiff performed his duties in a satisfactory manner or above.

13. After some time, Mr. Tucci relinquished the management of Mr. Weathington's department to another company executive, Mr. Ken Halverson. This transfer of power was made in an effort by Tucci to avoid active lawsuits and judgments levied against Tucci. Tucci sought to use the transfer of ownership in the enterprise to hide assets and avoid legal liability.

14. As a result, Mr. Halverson had day to day interaction and supervision of Mr. Weathington and most of the department at the location.

15. Mr. Halverson, almost immediately, created a hostile work environment using vulgar, inflammatory and abusive language and actions, including the throwing of office furniture, the use of 'curse' words, and language of an insulting and degrading nature.

16. Mr. Weathington's direct immediate supervisor at all time relevant was Defendant Harden.

17. From the inception of Mr. Weathington's employment he was sexually harassed by Defendant Harden.

    a. Defendant Harden's harassment was severe and persistent.

4

b. Defendant Harden approached Mr. Weathington on a number of occasions requesting that they rekindle their prior relationship. Mr. Weathington, each time, denied her advances and advised her, unequivocally, that he was not interested in any romantic relationship with Defendant Harden or anyone else.

   c. Defendant Harden, on a number of occasions, extended personal invitations to engage in sexual conduct to Plaintiff, which Plaintiff refused.

   d. Ms. Harden's advances continued and were observed by all throughout the office, including management and executive employees. Defendant Harden made salacious comments and invitations to Plaintiff during work hours and in the presence of other employees.

   e. Defendant Harden created a hostile work environment that Plaintiff was required to endure as a condition of his continued employment with Defendant company.

18. Eventually Mr. Weathington took his complaints to HR Manager Tony Maltese. Despite this, Defendant Harden's sexually explicit comments and behavior continued, and was exacerbated when Defendant Harden attempted to replace Mr. Weathington in his position with a friend of hers in retaliation for rejecting her.

19. To the best of Plaintiff's knowledge, Defendant Maltese, nor any other company executive took any actions to address Defendant Harden's behavior with remedial or corrective measures in connection with Plaintiff's concerns.

20. Defendant Maltese served as Human Resources personnel after the prior person left. Despite being aware that Mr. Weathington had been subject to ongoing sexual and verbal harassment from Defendant Harden, and being fully aware that Mr. Weathington is a straight male, Maltese made several homosexually charged advances toward Mr. Weathington-both in person and via text message.

   a. On some occasions, Mr. Weathington was required to collect his paycheck, after hours, from Maltese, where Maltese would initiate personal conversation of a sexual nature, and unwarranted invitations prior to

providing Weathington's pay, one of which included questions about the size of Mr. Weathington's penis.

21. Mr. Weathington was intimidated on a daily basis by both Defendants Harden and Halverson, and his job was threatened despite no complaints of his work performance being documented or presented to Mr. Weathington.

22. During the time Mr. Weathington was subjected to ongoing sexual harassment by Defendant Harden, personnel changes took place in the office that led to additional issues for Mr. Weathington.

    a. Mr. Halverson has an aggressive and abusive personality and management style. While his mistreatment of employees was spread throughout the office, Mr. Weathington was subject to racial comments and innuendo by Mr. Halverson, including, but not limited to, consistent threats to fire Mr. Weathington despite there being no evidence of or documented instances of misconduct or poor work performance by Mr. Weathington, and Mr. Halverson advising Mr. Weathington, during a 'casual conversation' that Mr. Halverson was 'a *member of the Brotherhood.*'

23. Mr. Halverson's abuse increased in intensity and frequency after the company received notice from the federal government advising FDATR to discontinue processing student loans and marketing and selling related services.

    a. Mr. Halverson advised Mr. Weathington and the other processors to continue processing as they had been **despite** the instructions from the Federal government.

    b. Based on Mr. Weathington's extensive experience in the industry, he advised Mr. Halverson and other management that it would not be wise to defy the Federal instructions and that management should consult the company's attorney about how to proceed.

    c. Mr. Halverson did not respond positively to Mr. Weathington's suggestion and shortly thereafter Halverson began floating a rumor around the office about Mr. Weathington being a 'whistleblower.'

    d. In addition, Mr. Halverson's aggressions against Mr. Weathington increased and included public berating, yelling, cursing, name-calling and more threats to his employment.

    e. Mr. Halverson's incessant intimidation led to a sustained hostile work environment for Mr. Weathington until things came to a head on a Thursday in June when Mr. Halverson publicly yelled, cursed and berated Mr. Weathington in the office.

    f. Mr. Weathington responded by leaving the office for the remainder of the day to cool off and defuse what was quickly becoming an escalated situation between the two. He advised his supervisor he would be out the remainder of the day and later contacted the same to advise that he would be out the next day- Friday- to deal with a personal family matter that subsequently arose.

24. Mr. Weathington returned to work on the following Monday, and was called into a meeting with Mr. Halverson during which his employment was terminated. The reason provided to Plaintiff for his termination was 'tardiness and failure to report to work.'

    a. At the time of termination, Plaintiff had never been late and had only been absent after notifying his supervisor that he would be out.

    b. Plaintiff had received no notice or adverse employment action for Defendants stated reason of termination prior to the date of termination.

## FIRST CAUSE OF ACTION
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII
### (*Under Title VII-Quid Pro* Quo-Against all defendants)

25. Plaintiff re-alleges and incorporates by reference herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

26. Plaintiff was obligated to sustain unsolicited and unwelcome sexual advances, comments, sex based innuendo and other sexually charged conduct, as a condition of his employment and other employment benefits.

27. Defendant's conduct was overt; Plaintiff's continued employment position was altered when Plaintiff spurned Defendant Hardens actions, and Plaintiff was required to endure Defendant Maltese's advances in order to receive his paycheck for hours which he'd already worked.

28. Because of Defendants' FDATR, Tucci and Halverson's failure to take prompt and remedial action, and its deliberate indifference to the unsolicited and unwanted sexual advances, Defendants have intentionally engaged in unlawful employment practices in violation of Title VII. Defendants, in fact, created an environment where such conduct could thrive.

29. The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected his status an employee because of sex; Plaintiff was denied a promotion and essentially demoted by Defendant Harden-and replaced with Defendant Hardens personal friend-after Plaintiff spurned and complained of Hardens actions.

30. Additionally, as a direct and proximate result of the Defendants harassing conduct, Plaintiff has been embarrassed, humiliated and suffered damage to his emotional and financial well-being.

## SECOND CAUSE OF ACTION
## RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII
### (Against Defendants FDATR, Tucci, and Halverson)

31. Plaintiff re-alleges and incorporates by reference herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

32. The Defendants' conduct as alleged herein constitutes discrimination based on race in violation of Title VII.

33. Defendant Halverson's conduct was not and would not have been directed to non-black employees.

34. Defendant Halverson's comments and actions were directed at Plaintiff *because* he was black-a protected class- and Defendant Halverson is an open racist who brought his racist and discriminatory attitudes to the workplace.

8

## THIRD CAUSE OF ACTION
## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
### (Against Defendants FDATR, Harden)

35. Plaintiff re-alleges and incorporates by reference herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

36. Defendants have engaged in intentional gender discrimination in the terms of Plaintiffs employment, including, but not limited to, the Plaintiffs hostile work environment.

37. Defendant Harden, having had a previous relationship with Plaintiff, used her position of power and the parties prior relationship to intimidate and harass Plaintiff into a sexual relationship with her and threatened Plaintiffs livelihood when Plaintiff failed to comply with her demands.

38. Defendant FDATR knew or should have known that such conduct by its supervisory staff would create a hostile work environment for Plaintiff and took no action to stop the conduct, train employees on appropriate and legal work conduct, or otherwise address such conduct in its workplace.

39. Defendant Harden, upon information and belief, is a heterosexual female, and her conduct would likely not have been directed at another female employee.

## FOURTH CAUSE OF ACTION
## RETALIATION IN VIOLATION OF TITLE VII
### (Against Defendants FDATR, Tucci and Halverson)

40. Plaintiff re-alleges and incorporates by reference herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

41. The Defendants' conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII and various state laws. Defendant's stated reasons for their conduct were not the true reasons, but instead was pretext to hide the Defendant's retaliatory animus.

42. Plaintiff was commanded to violate directives issued directly from the Federal government by both Defendants Halverson and Harden;

43. Plaintiff was directed to forge client signatures on documents by Defendants and suffered threats, humiliation, and adverse employment action when Plaintiff refused.

## FIFTH CAUSE OF ACTION
## HOSTILE AND ABUSIVE WORK ENVIRONMENT- SEXUAL HARASSMENT
### (Under Title VII-Against all Defendants)

44. Plaintiff re-alleges and incorporates by reference herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

45. The Defendants' conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII.

46. On a consistent basis during Plaintiffs employment, Defendant Harden subjected Plaintiff to sexual harassment.

47. On more than one occasion, after complaining of Defendant Hardens harassment, Defendant Maltese subjected Plaintiff to sexual harassment.

## SIXTH CAUSE OF ACTION
## SEXUAL HARASSMENT
### (Under IHRA, ILCS 5/2-102(D)-Against all Defendants)

48. Plaintiff re-alleges and incorporates by reference herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

49. Defendants Harden and Maltese's conduct as alleged above constitutes sexual harassment by a supervisor as provided for under ILCS 5/2-102(D), for which Defendants FDATR, Tucci and Halverson are strictly liable.

50. Under Illinois law, individual harassers are liable as individuals for their harassment, and thus, Defendants Harden and Maltese are liable to Plaintiff for the damages sustained by Plaintiffs as a result of Defendants actions.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT HIRING, RETENTION AND SUPERVISION
(Under *[state claim]* ----Against FDATR, Tucci and Halverson)

51. Plaintiff re-alleges and incorporates by reference herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

52. The Defendants knew, or in the exercise of ordinary diligence, should have known of the propensity of its employees to engage in sexually offensive conduct toward other employees, that of Defendant Harden in particular, as such due diligence would have revealed similar prior conduct.

53. Defendant nevertheless failed and refused to act to protect Plaintiff from the sexually harassing conduct of Defendants Harden and Maltese.

54. Defendant FDATR and Tucci knew or should have known of the propensity of Defendant Halverson to engage in racially charged, abusive and violent conduct in the workplace, as due diligence would have revealed similar prior conduct.

55. Defendants are thus liable to Plaintiff for all the damages sustained as a result thereof, including punitive damages.

## EIGHTH CAUSE OF ACTION
## DISPARATE TREATMENT
(Under Title VII--Against FDATR, Tucci and Halverson)

56. Plaintiff re-alleges and incorporates by reference herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

## NINTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Under *State Law;* Against all Defendants)

57. Plaintiff re-alleges and incorporates by reference herein each and every allegation in the preceding paragraphs, as though fully set forth herein.

58. The Defendants' conduct as alleged was extreme and outrageous. The conduct perpetrated by each Defendant took place in the context of the workplace, where such conduct is commonly acknowledged as inappropriate and/or illegal.

59. Defendants knew their conduct was both inappropriate and illegal and would likely cause others offense, humiliation, extreme discomfort and distress, and create an unsustainable work environment for those at whom the conducted was directed.

60. Defendants intended to inflict severe emotional distress or knew that it was a high probability that the conduct would do so.

61. Defendants conduct actually caused severe emotional stress.

62. Thus, Defendants are liable to Plaintiff for all general and specific damages proximately caused by Defendants intentional infliction of emotional distress.

## CONCLUSION

Defendants discriminatory conduct has caused Plaintiff to suffer a loss of pay, damage to his reputation and quality of life, and extreme emotional distress, entitling him to compensation pursuant to 42 U.S.C. 1981a.

Defendants' have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages pursuant to 42 U.S.C. § 1981a.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sadon Weathington respectfully prays the Court enter a judgment in his favor and against all Defendants, and award Plaintiff Weathington the following relief:

a) That the Court grant Mr. Weathington back pay in the amount of his salary up to and including the date of judgment, as allowed by law;

b) That the Court grant Mr. Weathington damages for the humiliation, pain and suffering and emotional distress caused by Defendants conduct in an amount to be determined at trial, as allowed by law;

c) That the Court grant Mr. Weathington punitive damages for Defendant's malicious and recklessly indifferent conduct in an amount to be determined at trial, as allowed by law;

d) That the Court grant Mr. Weathington any and all other employment benefits he would have enjoyed had he not been discriminated and retaliated against, as allowed by law;

e) That the Court grant Mr. Weathington expenses of litigation, including reasonable attorney's fees, pursuant to Title VII, and/or 42 U.S.C. 1988;

f) That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendant's from engaging in any and all discriminatory practices as prohibited under TitleVII and all other applicable State and Federal Laws;

g) That the Court grant Plaintiff any and all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury for all issues so triable in this action.

*[signature]*
Rita Haley-Austin
Attorney for Plaintiff
Haley Austin Law, PC.
9449 S. Kedzie Ave, Ste 242
Evergreen Park, Il 60805
312-380-9456 (o)
rita@haleyaustinlaw.com